Good morning, your honors, and may it please the court. John Gore on behalf of the United States. In Title II of the ADA, Congress expressly incorporated the remedies, procedures, and rights provided by the Rehabilitation Act, which in turn expressly incorporated the remedies, procedures, and rights provided by Title VI of the Civil Rights Act of 1964. At the time of the ADA's enactment, the law was well established that both Title VI and the Rehabilitation Act authorized the Attorney General to file enforcement actions in federal district court. Accordingly, Congress made clear in the ADA's legislative text, purposes, and history that the remedies, procedures, and rights incorporated into Title II include this authority of the federal district court. Here, the district court erred when it became the first and only court in the nation to hold that the Attorney General lacks a cause of action under Title II. The court should reverse that erroneous holding and remand the case. In Title II of the ADA, Congress imported the tried and true language of the Rehabilitation Act to incorporate the full bundle of remedies, procedures, and rights available both under that act and under Title VI. At the time of the ADA's enactment, courts had recognized that Title VI and the Rehabilitation Act create two federal government enforcement mechanisms. One is the termination of federal funding, and the second was enforcement lawsuits filed by the Attorney General. And when it came to enforcement lawsuits filed by the Attorney General, the courts had offered a variety of rationales for those lawsuits. At least two courts in the Baylor Medical Center and Tatum Independent School District cases we cited in our briefs had held that the Attorney General could enforce Title VI or the Rehabilitation Act through both common law contract actions tied to the federal funding and through statutory enforcement actions. Other courts had taken a different approach. They'd adopted a contract rationale or hadn't specified their rationale at all. Back to the first distinction you just made, you said other courts have held, and I was kind of waiting for a because. That is, what was the rationale that they said that you could sue independent of a contract action? Sure. Well, those two courts that I cited were Baylor Medical Center and Tatum, and they simply said that there was a statutory enforcement action under Title VI or the Rehabilitation Act without much explanation. But there was no court that had rejected the existence of a statutory enforcement mechanism. Some courts had adopted a contract rationale, and some courts hadn't really specified what their rationale was. But there was no court that said that the statute itself couldn't be directly enforced by the Attorney General. So Congress was acting against a patchwork backdrop when it enacted the ADA and it adopted Title II. But Congress was aware that termination of federal funding would not be a viable remedy under Title II because Title II doesn't have a funding hook, unlike the Rehabilitation Act and Title VI. And Congress recognized that in the legislative history and in its legislative purposes. And so the only federal enforcement mechanism that it could have imported into Title II was this mechanism of enforcement actions filed by the Attorney General. And that's exactly what Congress did. It wanted to bring in the full... But your adversary at points in the briefs makes the point that the definition of person in Title II doesn't include the government, whereas in Title I it does. In these other statutes that you refer to, what's the definition of person? Is there any traction from that, or is it the same as Title II, simply silent? It's the same as Title II in the Rehabilitation Act also uses the word person. And it says that the remedies, procedures, and rights that are made available by Title VI are available to any person under the Rehabilitation Act. It doesn't have the definition of person that's in Title I. It does not. But the courts had held that the Attorney General could bring in enforcement action. The reason I think Title I has that special definition of person is that Title I is simply an extension of Title VII to individuals with disabilities. And so Congress did a lot of work to preserve the Title VII scheme and just import that into Title I and was very specific about it. Title VII does define persons... It does, yes. And Title I defines it the same way. And ultimately though, Your Honor, we think that's largely beside the point because it was clear that Congress was acting against this patchwork backdrop that had it recognized, at least by some courts, a statutory enforcement mechanism. So this case is actually analogous to the Supreme Court's decision in Cannon v. University of Chicago. The Supreme Court in that case rejected a line of argument similar to what the state is advancing here. The defendant in Cannon argued that Title IX, which likewise incorporates Title VI's enforcement scheme, could not imply a private right of action unless Title VI did so as well. And the Supreme Court rejected that out of hand. The Supreme Court said that it didn't even need to address whether Title VI created a private right of action, at least in one line of the court's reasoning. It explained, and it's at 441 U.S. at 711, that the relevant inquiry is not whether Congress correctly perceived the then state of the law, but rather what Congress's perception of the state of the law was. So it was enough in Cannon for the Supreme Court that Congress thought there might be an implied right of action under Title VI for the court then to find an implied right of action under Title IX. And here it's clear. If we were to conclude that the Attorney General cannot be a person alleging discrimination under Title II, do you lose or is there another rationale? No, not at all. In fact, we've explained in our brief why we don't think that rationale is on point because it's clear, as I was just explaining in an analogy to Cannon, that Congress perceived that it could extend the Attorney General's enforcement authority to Title II simply by importing the full bundle of remedies, procedures, and rights from the Rehabilitation Act in Title VI. Remember what I said before. But under Title VI in the Rehabilitation Act, you're asking for us to import not the statutory language. You're asking us to go a bridge further and say, let's look at the entire regulatory scheme that appears in the Federal Register. You're not pointing to statutory language, right? We're actually pointing to both because the administrative scheme under the Rehabilitation Act has kind of a unique history, as we've laid out in our brief. When the Rehabilitation Act was enacted in 1973, it didn't have an enforcement mechanism at all. And so in 1977, the then Department of Health, Education, and Welfare, with Congress's oversight and approval, drafted a set of regulations that created an administrative scheme and borrowed from the Title VI enforcement scheme that HEW already had in place. When you said that in your brief about the congressional oversight and approval of this regulatory scheme, what exactly do you mean by that? HEW was designated as having coordination authority for the enforcement of the Rehabilitation Act, which that authority now resides in the Department of Justice. But Congress had directed HEW to coordinate all of the federal government's actions in this realm and to regulate on this topic. How is that different than the federal government's regulatory approach to everything? Would you say that every time a cabinet agency is regulating, they're doing it under the approval of Congress because of the Congressional Review Act? I guess I'm just trying to get at why are you making that statement specifically here? There are two reasons. First of all, because there was a specific grant of authority for HEW to fill in the gaps and perform this coordination role. But secondly, and more importantly, is that in 1978, Congress codified those regulations in the Rehabilitation Act through the Remedies, Procedures, and Rights language, and that's what the Supreme Court held in Duron. The Supreme Court said these regulations are special because they were conducted under this congressional oversight, and then Congress codified them when it amended the Rehabilitation Act in 1978. So whether or not we worry about the statutory basis in 1977, by 1978, there was an explicit statutory basis by the codification. That's absolutely correct, Judge Boggs, and as I said before, Congress clearly perceived that it could do this. It had a high-level understanding that Title VI and the Rehabilitation Act authorized attorney general enforcement suits, and it sought to import that scheme wholesale into Title II. And that was the only federal government enforcement mechanism it could bring into Title II. Because the termination of federal funding isn't available because there's no funding hook under Title II. The state takes a different reading of Title II. It focuses on the person language, but we think that's largely beside the point. Also for the reasons that I've laid out, we think that this debate about whether Title VI and the Rehabilitation Act are contract actions or statutory actions or both is beside the point as well. Congress could extend the attorney general's enforcement authority into Title II without resolving the legal niceties of whether Title VI or the Rehab Act were contract actions or statutory actions, particularly because the courts hadn't resolved those. The courts had said that they might be statutory actions or they might be contract actions, and no court had rejected the statutory enforcement rationale. What's your answer to the argument that Title I and Title III of the ADA specifically refer to attorney general enforcement actions, whereas Title II does not? All three of those titles have a different history, and there are reasons why those two titles mention the attorney general and Title II doesn't. As I mentioned before, Title I is simply importing the enforcement scheme of Title VII to the employment context, and so Congress was trying to preserve the division of authority between two federal actors, the EEOC and the attorney general. So it went ahead and it named those actors in Title I. Title III was creating totally new enforcement mechanisms and remedies available to the attorney general, so it was necessary to name the attorney general in order to do that. That wasn't true in Title II. Title II is just a wholesale extension of the Rehabilitation Act to all state and local government entities and programs, regardless of whether they're receiving federal funding. That's all consistent with how Titles I, II, and III were drafted as a general matter. Title II contains very little detail. Congress simply said, we're expanding the Rehabilitation Act beyond federal funding, and we're directing the Department of Justice to fill in the gaps. Titles I and III are much more extensive and reticulated in terms of the anti-discrimination mandates and the enforcement provisions. So for all those reasons, Title II encompasses the full bundle of remedies, procedures, and rights available under the Rehabilitation Act in Title VI, including enforcement actions by the attorney general. May it please the Court, my name is Andy Bartos on behalf of the state of Florida. When Congress authorizes the federal government to sue, it does so in express terms. Newport News held this, and Marshall held this. We must look for express statutory authority for the attorney general's power to sue. When we look at Title II, we don't see that. When we look at Titles I and III of the ADA, we do see that. What we see in Title II is that the ADA incorporates rights, remedies, and procedures that were set forth in a prior statute. So to your question, Judge Branch, the rights, remedies, and procedures must be set forth in the prior statute instead of arising from a regulatory scheme, and then it provides those rights to any person alleging discrimination, which the attorney general doesn't claim to be. The attorney general's theory is that the prospect of an enforcement action, a federal enforcement action, is a right provided to a person alleging discrimination. But the attorney general cites no precedent for that approach. There's no precedent for Congress thinking of and conceptualizing a federal cause of action, a federal enforcement power, as a right provided to an individual. And it's improper to think of it that way because of Newport News and its holding the grant of power must be explicit. It's also improper to think of it that way because an individual, a private party, has no control over that federal enforcement action. They have no control, first, when they submit an administrative complaint to the Department of Justice, whether the department ever investigates it, whether the department ever acts on it, makes findings, whether the department ever sues. There's even confusion in the attorney general's briefs about what sort of action this is. Is the attorney general suing on behalf of an individual to recover individualized remedies? That's what they suggest in their initial brief. Or are they suing on behalf of the United States seeking systemic relief, which is what they suggested in the district court and what they say in their reply brief. So a federal cause of action is not a right provided to an individual. It has never been thought of that way, and it wasn't done and is not so here. And Title I is. If I could break in, do I understand correctly that in this case, they did have, they began discussions, they had findings, they had a sit-down with Flart. Is that all basically correct? Yes, Your Honor. And so then the question is, at that point, if they don't have the right to sue, what can they do? So hold that question. The rest of his argument, as I understood it, was that all the points that you've made would be equally applicable to parts of Title VI and the Rehabilitation Act so that those enforcement actions, which suits, which the government has been bringing without much quarrel, would also fall if your argument is correct. Would you address those two in whatever order is good for you? Yes, Your Honor. On the last point, first, I think it's very important for this court to scrutinize the brief about how broad this consensus was in favor of federal enforcement of Title VI and the Rehab Act and how much judicial precedent there is to that effect. I believe if the court looks at it carefully, it'll find that there's very little precedent to that effect. I mean, over decades of potential enforcement, they say that they've been bringing these suits regularly. I question that. The Department of Justice cites the Baylor case and the Tatum case in which the court suggested that there might be a statutory enforcement action as well, but most of the cases that the Department of Justice cites, it's either dicta or it's a contract action or the court's simply not clear about whether it's a contract action or a statutory action. So there is no circuit court case for sure holding that the Department of Justice has statutory authority to enforce Title VI and the Rehab Act, and we don't see many cases that suggest that at all. The Title VI regulations, I think this is an important point as well, since there is nothing in Title VI's statutory language authorizing the federal government to sue, it's important to keep in mind that the regulations, I think, also support our position, because while they cite the language suggesting that the Department of Justice might bring appropriate action, they don't cite the portion that explains what that is, and what the regulations say is not that the Department of Justice can sue under Title VI. What the regulations say is that the appropriate action means perhaps a contract action if the agency has obtained contractual assurances of compliance from an entity that receives federal funds. Perhaps it could be enforcement under another title of the Civil Rights Act, because there are other titles where there is some overlap, and those titles explicitly spell out not only the Attorney General's authority to sue, but also the jurisdiction of district courts to hear those cases, or it could be an action under state and local law. So the Title VI regulations explicitly spell out all of the different options that are available to the government, but they are not statutory enforcement actions. That's not what the regulations say. And I think that this suggestion that Congress, in looking back, incorporated a potential contract action or some other action that might have been available to the Department of Justice, and transformed that into a federal enforcement action, I think doesn't give Congress enough credit. I think that wasn't simply that the Department of Justice might have had a contract action. It's not a minor detail. So when Congress was looking at what's available to the Department of Justice, it would have looked at the statutory language that says other means authorized by law are available to the Department of Justice, but it would not have then taken that and converted a contract action with the various elements that must be proven, the potential remedies that are available in those actions, and said, now you get a federal statutory enforcement action without somehow making that clear, first in the Rehab Act and then in Title II. So the regulations don't support the point that there was this well-established statutory federal enforcement action under the prior statutes. And I'm sorry. Yes. The issue that we have before us is in a circumstance in which there would not be a contract enforcement part. Yes. Okay. Yes. That would be this case. And in that situation, Your Honor, I think, you know, that Title II has been enforced consistently and effectively over the years by private rights of action, supported by attorneys. That's the next case we're going to have, maybe. Perhaps, yes. Can you sort of go to my second part then, where I was effectively saying, well, look, they set up this whole thing. You have findings. You have meetings. And at that point, Florida says, buzz off. Go home. Right. And is that correctly your position? Well, yes, except that the Department of Justice is working in reverse there. So they can't begin by establishing an administrative process and saying, we're going to issue findings letters and then saying, well, now it's ineffective, so now you need to recognize a federal cause of action. It doesn't work that way. An agency can't do its own regulatory or administrative efforts. I understand. I'm just trying to make sure that I get the practical effect here, which does at least raise some question as to how Congress might have meant it and how you might interpret it, that they set up this process and then it stops, unless you have a federal funds issue. Unless there's a federal funds issue? That indeed is your position. But what Congress was incorporating into Title II, for sure, was the private right of action, which did exist under the Rehab Act and did exist under Title VI. And the reason they would incorporate that is there was a vast body of precedent at that point outlining the contours of the private right of action. So, you know, which statute of limitations applies, is there a jury trial, what remedies are available? All of that was incorporated into Title II. Now, it doesn't mean that the federal government has no enforcement authority under Title II of the ADA. So, CRIPA, for example, acts as a vehicle, especially in the institutionalization context, for enforcing federal constitutional and statutory rights. The federal government, if it satisfies certain conditions, the Department of Justice could bring an action under CRIPA that enforces Title II itself. I think the district court made that point, and I think it's a good point, because what the Department of Justice has done here is avoid the more stringent standards that Congress established in CRIPA for enforcing federal statutory rights in the institutionalization context. And so it has avoided that and essentially rendered CRIPA unnecessary. So it still has CRIPA, it can still investigate, and if it believes that this more stringent standards of CRIPA have been satisfied, it can then act on its findings letter. It can certainly issue the findings letter that could then serve as a basis for private enforcement, and the Department of Justice could then intervene, it could file statements of interest, it could file an amicus brief. There are levers that it can pull. It can act under the Rehabilitation Act, which has very similar standards, if not identical standards. And if it's an entity that receives federal funds, it can be acted on through the Rehabilitation Act. So there are mechanisms in place, but what didn't exist under Title VI or under the Rehab Act, and therefore doesn't exist in Title II, is a federal statutory enforcement action. There's simply no language to that effect, and I think that's all the more pronounced when we look at the other titles within those statutes. If we look at the remedial and provisions of the ADA and of the Civil Rights Act, they are very carefully considered, they are very carefully laid out. Under Title I, the Attorney General is mentioned alongside a person alleging discrimination, and otherwise it's almost a mirror image provision to the one in Title II. I think the point that person is defined to include the government in Title I makes the point even more forcefully for us, because there would be that much less reason to separately identify the Attorney General in Title I, because Title I already would define person to include the government. And yet Congress still did that, it still identified the Attorney General separately in Title I. Same thing in the Civil Rights Act. We look at the different titles of the Civil Rights Act, and Congress was very direct, very explicit about how federal enforcement authority is to be exercised, if at all. It identified the conditions under which it can be exercised, it identified the jurisdiction of the district court. There's simply nothing to that effect in Title VI, or for that matter, in the regulations, because... Counsel, let me, just to be clear again, a minute ago you sort of said the same thing that you were about to get there. There is no basis in the Rehab Act or Title VI, but then that means all of these actions that have been brought are without a statutory basis as well. Under the Rehab Act and Title VI? Well, first of all, again, I would question whether, how many such actions have been brought. I don't think it's many. You would concede there's as many as one. I would concede there's as many as one, but I'm not sure that there's as many as one where there was no contract to enforce. Even in Tatum, for example, Tatum says, well, there's statutory authority, and the Department of Justice recognizes that there's almost no analysis in that case about the statutory enforcement authority, but there also was a contract in that case. So many of these cases, to the extent that there were many, but the cases that they've cited, there likely was a contract in place which the government has the ability to enforce. There's no question about that. If there are federal funds involved, the government can enforce those. So I don't know that the government has cited to you a single case where it was relying exclusively on statutory enforcement as the mechanism. So the Marion County case is a very good example. There, the Department of Justice brought a contract action. In a footnote, the court explained that while the Department of Justice had asserted statutory authority as well, it has explained that that's only subordinate to its contract claim. So that was clearly a contract action, and the Department of Justice recognized that in that case. And what the Fifth Circuit in that case, former Fifth Circuit, explained is that the language other means authorized by law in Title VI, all that does is preserve to the Department of Justice whatever authority it might have had under other sources of law. So for example, under Title VI, we have the fund termination provision. What Congress wanted to make clear is that that fund termination provision is not the exclusive enforcement mechanism. Other means that might exist in other statutes or under the common law, if they want to bring an action for specific performance, those will be preserved to the government. We won't read the fund termination provision as being exclusive. So I don't think that we have seen a federal rehab act or a Title VI claim that was exclusively under statutory authority. Can I ask you a question? Yes. We're talking about practical results. If we were to allow the United States to proceed with this lawsuit, it is brought in the name of the United States, not on behalf of individual people, correct? Correct. How does Florida defend against that if we're not talking about, we're not looking at individuals for specific harm? What is the practical reality of how Florida goes forward with that? Well, that's a great question, and that's what we struggled with for three years in this litigation, because this action in which they're seeking systemic relief, as they described it in the district court, is unprecedented. We don't know what the elements of the cause of action are. We don't know how to defend against it. They said throughout the district court proceedings, this is an action for systemic relief. We don't bring this on behalf of individuals. We are not asserting their claims. We don't assert that their rights were violated. So now they say in their opening brief that Congress gave them the power to sue on behalf of individuals, and that they're here to vindicate the rights of individuals who might have filed administrative complaints. Totally inconsistent. And this is where I think the federalism interests really come into play. In Olmstead, where the Supreme Court recognized the power of two private individuals who filed separate complaints to sue under Title II for individualized relief, not systemic relief, they simply wanted reasonable accommodations that would allow them to move out of an institution and into the community. Even there, Justice Kennedy in his concurrence recognized that this imposes federalism costs. Here, in this case, when the Department of Justice, I suppose their theory is that if someone files an administrative complaint, they are then untethered from that, and now they can seek systemic relief. Now they can go in and seek an injunction that changes the state's health care policies. And there's of course no precedent for that. But that's more than injunctive relief. They're seeking compensatory damages here, correct? They did seek compensatory damages. The magistrate judge recommended the dismissal of those claims. That report and recommendation was not acted on before this case was dismissed. But yes, they are seeking damages, which they say they will distribute in their own discretion. So again, what kind of action is this really? Are they seeking individualized relief? Are they seeking systemic relief? What are the elements if they're seeking systemic relief? Nobody knows because this statutory enforcement action doesn't exist. And theoretically, if you had individual plaintiffs who were seeking compensatory damages and the federal government seeking compensatory damages, at least it's theoretical for a double recovery. Potentially a double recovery. And I think, especially in this case, Your Honor, I think the court, even if it agrees with everything the Department of Justice is arguing, I think the court needs to hold them to their representations in the district court. This was not brought to vindicate individual claims. And they don't have an action for systemic relief at the very least. They don't even make an argument to that effect in their opening brief. So if their argument is, we're here to vindicate individual rights of individuals who filed administrative complaints with us, then this action needs to be dismissed because that's not the case they brought. Thank you. Unfortunately, the state continues to mischaracterize and misstate the facts in the law in several important respects, both with respect to the district court action and our position on appeal. And I'll try to clarify all of those. First, the state's description of an administrative enforcement scheme is simply wrong as a matter of both fact and law. Individualized relief is common in administrative enforcement schemes. We've cited cases on page 18 and 19 of our reply brief to that effect. Counsel also said there's no precedent for an administrative enforcement scheme culminating in an individualized action brought by the Attorney General. I would cite the court to the Fair Housing Act, where that is extraordinarily common. It's common in other civil rights statutes, including Title VI, the Rehabilitation Act, and Title II of the Americans with Disabilities Act. They cite some cases in their brief about administrative enforcement review schemes and enforcement schemes and whether they result in remedies. The state has misrepresented those cases. Those cases deal with other propositions, that there's no judicial review of the administrative enforcement scheme, and that private parties don't have a right to demand termination of federal funding. So those cases are completely off point and don't have anything to do with whether the The state keeps mischaracterizing the United States' theory of this case and keeps misstating what the case is about. I'll cite you to paragraph four of our complaint, where we say, the United States brings this action against the state to enforce the rights of children to receive services in the most integrated setting appropriate to their needs. We then go on for paragraph after paragraph after paragraph describing how the state's Moreover, the state overlooks, it quotes a footnote from one of our briefs. But you're not bringing it on behalf of individual plaintiffs. I mean, so that point is correct. I disagree with that, Your Honor. We are actually bringing it. The dispute below was about how the case had to be tried and what we had to prove. They cite a footnote of one of our briefs in the district court, but don't quote the most important portion, which is where we told the district court, violations of individuals' rights have occurred in the United States in answering Florida's interrogatories, therefore identified facts that would support such claims. That's at ECF number 426 at page three, note three. In fact, the United States There's a distinction that you're not bringing it on behalf of individual named people, John, Mary, and Bill. You're seeking to vindicate the rights of these children collectively. They presumably exist, or you'll claim they exist, but you're not giving them by name. They all exist, and they're all persons alleging discrimination, and we identified over 200 such children in our interrogatory responses, and that's how we were going to try the case. We were going to show through the typical and common experience of these children that the state has a collection of policies that violate Title II of the ADA. The state wanted to force us to put every individual claimant on the stand and prove every individual claim individually. There's no requirement that we do that. We can show through the typical and common experience that there are across the board failures in the state's policies to comply with the ADA. If there's any doubt about that theory, we can always amend our complaint on remand to make it clear, and to make it clear that if we show So then is the remedy that you're going to be seeking with respect to individuals, that is, will you want the district court to issue an order that says John, Mary, and Bill will get money or will get services, or is it going to be that Florida shall do certain things generally? I think it's a combination of both. We sought damages, but we also were seeking changes to Florida's policies. It has one set of policies that it applies over and over and over again to children in these settings, and we think if you fix the policies Do you have any position on the next case we're going to hear, which does start with individuals? Sure, although I think that case has a rationale, a mootness rationale, that doesn't apply to the United States because we were challenging other policies, and that rationale was, those policies were changed in that case, and so that may have dealt with those individual claims. We brought all kinds of enforcement actions under Title II without a contract to correct something the state said. All of our Olmstead cases that we brought in Virginia, in Florida, and in other states have been without a contract. We bring cases. We have one currently against Harris County, Texas, involving its polling places. That was brought without a contract and not tied to federal funding. We brought action after action in the decades since Title II was enacted, and we've been able to negotiate pre-suit settlements in a lot of those cases, and those settlements recognize the Attorney General's Enforcement Authority and were only possible because there was a threat of a federal lawsuit. What's your colleague sort of says, Well, all of these cases have other strings to the bow. What's our best case we would look to for a holding that completely separates from contract action? We gave you two, Baylor Medical Center and Tatum, and then the other district court cases we've cited that have rejected the state's argument in Virginia and in Harris County and recognize that the Attorney General has a cause of action to enforce Title II. Those did not have a funding hook. And CRIPA doesn't provide a sufficient remedy here either because that only applies in institutions and would not give us the full remedies, procedures, and rights that Congress had recognized in the Rehabilitation Act in Title VI. Let's be clear about who has a broad theory. Their theory sweeps across the entire scope of Title II. The district holding stands the United States cannot bring any enforcement action to enforce Title II. Wait, explain to me about why CRIPA is not a sufficient remedy. Sure. You said it only applies to institutions. Can you expand on that? Yes, the Civil Rights of Institutionalized Persons Act. So it only applies in institutions, and it only applies where there's a pattern or practice of violations of the Constitution or of Title II. Congress, in Title II, wanted to give us a full bundle of remedies, rights, and procedures that had been given to the Rehabilitation Act and under Title VI. So, for example, we couldn't bring a case under CRIPA to enforce a school's obligation to install a ramp or an elevator for a child in a wheelchair. We can do that under Title II, although under the state's theory and the district court's holding, it would knock out any Title II enforcement action by the United States, including the one against the school. We couldn't bring an action to enforce a county's obligation to remove barriers and make its polling places accessible to voters with disabilities. We couldn't bring an action against a court to require it to make its courthouse accessible to persons with disabilities, even though the Supreme Court recognized that obligation in Tennessee v. Lane. So they're the ones who have a breathtakingly broad theory because it would knock out all Title II enforcement by the Attorney General, and CRIPA is just a narrow remedy that applies in a limited set of circumstances and certainly doesn't convey the full bundle of remedies, procedures, and rights that Congress had thought were in existence under Title VI in the Rehabilitation Act and tried to incorporate into Title II. Congress used a try-to-do formulation. Their theory of federalism turns those principles on its head. The Supreme Court's already held that Title II satisfies the clear statement rule in YESGI. This clear statement rule applies only to congressional enactments that impose federal law obligations on states, not to enactments that create enforcement authority in the Attorney General or any other party. It would make no sense to extend the clear statement rule here because, as the cases we've cited in our brief explain, there's no federalism concern and no constitutional limit on actions by the United States brought against a state, unlike the 11th Amendment, which applies to private party actions. So I'm happy to answer any other questions the Court may have, but we think the law is clear and that the Court should give effect to Congress' stated purposes and intent in the ADA and its clear language, and the only way to do that is to reverse the district court.